**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ROTOLIGHT LIMITED | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. |
| | § | |
| APUTURE IMAGING INDUSTRIES CO., | § | **JURY TRIAL DEMANDED** |
| LTD. | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Rotolight Limited ("Rotolight" or "Plaintiff"), by and through its attorneys, for its Complaint for patent infringement against Aputure Imaging Industries Co., Ltd. (collectively, "Aputure" or "Defendant"), and demanding trial by jury, hereby alleges, on information and belief with regard to the actions of Defendant and on knowledge with regard to its own actions, as follows:

**I.      INTRODUCTION**

1.      Plaintiff brings this patent infringement action to protect its valuable patent technology relating to innovative lighting systems and special effect solutions for high-end cinematic and television productions.

2.      Rotolight manufactures, and sells world-wide its award-winning, patented LED lights containing advanced, patented technology for use in film, TV, and special effect cinematography.

3.      Rotolight is a family owned business based in the UK and has been recognized for its innovation and advancement of engineering excellence in the television and film industry.

1

4.      Rotolight's products are used regularly by leading broadcasters and film production companies including Netflix, Amazon Studios, Sky, BBC, RAI, and ITV.

5.      Rotolight won, amongst many other awards, the prestigious Cinec Lighting Engineering Award for "outstanding and market-ready achievements and innovations in motion picture and post-production technology."

6.      Rotolight was the first to market to have user customizable cinematic special effects integrated in its LED lights for the film and TV industries, which saves filmmakers, cinematographers, and lighting gaffers considerable time and money on set by simplifying their workflows by eliminating the need for complicated and expensive traditional "flicker box" effect generators, and other equipment typically associated with special effects using conventional lighting technology.

7.      Rotolight has been consistently recognized for its innovation and advancement of engineering excellence in the broadcast market, has won over 30 international awards from leading industry publications, and has been awarded over 40 patents.

8.      In 2023 Rotolight was a finalist for the International Association of Broadcast Manufacturers "Innovation of the Year Award" at a ceremony held in Las Vegas, being the only lighting manufacturer shortlisted by the association.

9.      Cinematic Special Effects, "CineSFX" is a registered trademark of Rotolight Limited.

10.     In 2023, Rotolight publicly announced settlement and licensing agreements with ARRI Inc., and Rosco Laboratories relating to the same patents asserted herein against Aputure. Those agreements included publicly agreed press release, most recently with Rosco Laboratories which stated: *"ROSCO LABORATORIES, INC® has agreed to an IP licensing agreement with*

*Rotolight®, relating to Rotolight's cinematic special effects "CineSFX®" patent portfolio in the US, UK, and Europe. ROSCO acknowledges the validity of Rotolight's patents and is pleased to join Rotolight's licensing programme."*

11.      Rotolight sent Aputure a letter on March 22, 2023, that provided notice of its patent portfolio, including charts mapping the Asserted Patents' claims to Aputure's products.   The letter also invited Aputure to take a license to Rotolight's patents, including the Asserted Patents.

12.      Despite repeated invitations to respond to Rotolight's letter both by email and a videoconferencing call, Aputure has not formally responded to any of Rotolight's infringement allegations.

13.      On May 18, 2023, a video conference was held between Rotolight representatives and representatives from Aputure.  On the video conference, Rotolight reiterated its request for a response to Rotolight's detailed infringement allegations.  To date, Aputure has not responded to Rotolight's repeated requests.

14.      As such, Aputure has shown that it has been and continues to be unwilling to negotiate a license in good faith with Rotolight.

## II.      NATURE OF THE ACTION

15.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, et seq., to enjoin and obtain damages resulting from Defendant's unauthorized use, sale, and offer to sell in the United States, of products, methods, processes, services and/or systems that infringe Plaintiff's United States patents, as described herein.

16.      Defendant, individually and collectively as a common business enterprise, manufactures, provides, uses, sells, offers for sale, imports, and/or distributes infringing products

and services, and encourages others to use their products and services in an infringing manner, as set forth herein.

17.     Plaintiff seeks to enjoin Defendant and also past and future damages and prejudgment and post-judgment interest for Defendant's infringement of the Asserted Patents, as defined below.

### III.     PARTIES

18.     Plaintiff Rotolight Limited is a limited company organized and existing under the law of the England, with its principal place of business located Wooburn Industrial Park, Unit 10, Thomas Road, High Wycombe, Buckinghamshire, England, HP10 0PE.

19.     Rotolight is the owner of the entire right, title, and interest of the Asserted Patents, as defined below.

20.     On information and belief, Defendant Aputure is organized under the laws of China with its principal place of business at 2/F to 4/F, Building 21, Longjun Industrial Estate, Longhua, Shenzhen, P.R.China.

### IV.     JURISDICTION AND VENUE

21.     This is an action for patent infringement that arises under the patent laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 283, 284, and 285.

22.     This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

23.     This Court has personal jurisdiction over Aputure in this action pursuant to due process and/or the Texas Long Arm Statute, by virtue of at least the substantial business Defendant conducts in this forum, directly and/or through intermediaries, including but not limited to: (1) having committed acts within the Eastern District of Texas giving rise to this action and having

established minimum contacts with this forum such that the exercise of jurisdiction over each

Defendant would not offend traditional notions of fair play and substantial justice; (2) having

directed its activities to customers in the State of Texas and this District, solicited business in the

State of Texas and this District, transacted business within the State of Texas and this District and

attempted to derive financial benefit from residents of the State of Texas and this District, including

benefits directly related to the instant patent infringement causes of action set forth herein;

(3) having placed their products and services into the stream of commerce throughout the United

States and having been actively engaged in transacting business in Texas and in this District; and

(4) either individually, as members of a common business enterprise, and/or in conjunction with

third parties, having committed acts of infringement within Texas and in this District.

24.     Aputure has committed and continues to commit acts of infringement in this

District directly and through third parties by, among other things, making, selling, advertising

(including through websites), offering to sell, distributing, and/or importing products and/or

services that infringe the Asserted Patents as defined below.

25.     Venue is proper against Aputure in this District pursuant to 28 U.S.C. § 1391(c)(3)

because Aputure is a foreign corporation not resident in the United States and venue is proper in

any district against a foreign corporation.

## V.      COUNTS OF PATENT INFRINGEMENT

26.     Plaintiff alleges that Defendant has infringed and continues to infringe the

following United States patents (collectively, the "Asserted Patents"):

> United States Patent No. 10,197,257 (the "'257 Patent") (Exhibit A)
> United States Patent No. 10,197,258 (the "'258 Patent") (Exhibit B)
> United States Patent No. 10,845,044 (the "'044 Patent") (Exhibit C)
> United States Patent No. 10,203,101 (the "101 Patent") (Exhibit D)

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT 10,197,257**

27.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

28.     The '257 Patent, entitled "Lighting System and Control Thereof," was filed on November 22, 2017, claims priority to a provisional application filed on April 8, 2016, and issued on February 5, 2019.

29.     Plaintiff is the assignee and owner of all rights, title, and interest to the '257 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

**Technical Description**

30.     The '257 Patent claims a "method for controlling a lighting device to produce a range of user customizable realistic lighting effects for videography, broadcasting, cinematography, studio filming and/or location filming" '257 Patent, Abstract.

31.     The '257 Patent provides a technical solution to prior art problems by, among other improvements, eliminating the need for a separate flicker box, which is independent of a lighting device, that is used to produce flickering light effects to mimic flickering light for example from a fireplace, candle, electrical spark or lightning for on set television/broadcast production use. '257 Patent, 1:18-41.

**Direct Infringement**

32.     Defendant has been and is directly infringing the '257 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using (including for testing purposes), importing, selling, and offering for sale lighting devices that infringe one or more claims of the '257 Patent. Defendant, individually and collectively as a

common business enterprise, develops, design, manufactures, sells, and distributes lighting devices that infringe one or more claims of the '257 Patent.  Defendant further provides services that practice methods that infringe one or more claims of the '257 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271. An exemplary infringing product includes, but is not limited to, the Aputure P300, P600,  MC, LS300X, LS600X PRO, LS C300D II, LS 600C PRO, LS12000D PRO, Lightstorm 120D MKII,  and the Amaran 300c, 150 C, 200x S, 200d S, 100x S, 100d S, COB 60x S, 60d S, 60d, 100d, 100x, Pt4c, PT2 and all other substantially similar products (collectively the "'257 Accused Products").

33.     Plaintiff names these exemplary infringing instrumentalities to serve as notice of Defendant's' infringing acts, but Plaintiff reserves the right to name additional infringing products, known to or learned by Plaintiff or revealed during discovery, and include them in the definition of '257 Accused Products. As an exemplary Accused Product, the P600c is described below.

34.     Defendant is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the '257 Accused Products and other similar products.

35.     The '257 Accused Products are non-limiting examples of lighting systems that meet all limitations of at least claim 1 of the '257 Patent, either literally or equivalently.

36.     The '257 Accused Products comprises a method for controlling a lighting device to produce a user customisable lighting effect.



Source:  https://www.aputure.com/products/nova-p600c/



Source:  https://www.aputure.com/products/nova-p600c/

37.    The '257 Accused Products comprises an effect simulator adapted to calculate a time varying lighting value based on at least one simulation parameter; wherein said at least one simulation parameter characterizes a user customisable lighting effect selected from a range of different user customisable lighting effects for at least one of: videography, broadcasting, cinematography, studio filming, and location filming; wherein the at least one simulation parameter is at least one of: a random brightness; a random duration; and a random interval; said simulation parameter depending on the user customisable lighting effect being simulated:

8



*The "R" value here in speed control denotes a Random speed parameter selected by the user.*

*Photo taken at the NAB Show Las Vegas, April 2023.*



Source:  https://www.aputure.com/collections/studio-lights/



Source:  https://www.aputure.com/products/nova-p600c/

38.    The '257 Accused Products' "lightning" and "paparazzi" modes, for example, vary over time and are generated based on the adjusted effect parameters.

39.     The '257 Accused Products further comprise outputting, from said effect simulator, said time varying lighting value thereby to simulate the user customisable lighting effect.



https://www.aputure.com/products/nova-p600c/

**Willful Infringement**

40.     Upon information and belief, Defendant has had actual knowledge (or should have been aware) of the '257 Patent and its infringement since at least March 22, 2023, when Rotolight sent a notice letter to Aputure.

41.     Further, Defendant has had actual knowledge of the '257 Patent and its infringement since at least service of Plaintiff's Complaint.

42.     Although Defendant has  incorporated Plaintiff's patented technology as set forth in this Complaint, Defendant has no license to use the technology described in Plaintiff's technical materials and claims disclosed in the patents, which are assigned to Plaintiff.

43.     Defendant's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Defendant.

44.     Notwithstanding this knowledge, Defendant has knowingly or with reckless disregard willfully infringed the '257 Patent. Defendant has thus had actual notice of the infringement of the '257 Patent and acted despite an objectively high likelihood that their actions constituted infringement of Plaintiff's valid patent rights, either literally or equivalently.

45.     This objective risk was either known or so obvious that it should have been known to Defendant. Accordingly, Defendant's infringement has been and continues to be willful, and Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

**Indirect, Induced, and Contributory Infringement**

46.     Defendant has induced and is knowingly inducing their distributors, customers, and/or end-users to directly infringe the '257 Patent, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

47.     Defendant has knowingly contributed to direct infringement by their customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the '257 Accused Products which are not suitable for substantial non-infringing use and which are especially made or specially adapted for use by its customers in an infringement of the '257 Patent.

48.     Defendant's indirect infringement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce their customers and/or end-users to directly infringe the '257 Patent.

49.     Defendant's indirect infringement additionally includes marketing their products for import by their customers into the United States. Defendant's indirect infringement further

12

includes providing product specifications instructing its customers on infringing uses of the accused products. The '257 Accused Products are designed in such a way that when they are used for their intended purpose, the user infringes the '257 Patent, either literally or equivalently. Defendant knows and intends that customers who purchase the '257 Accused Products will use those products for their intended purpose. For example, Defendant's United States website, https://www.aputure.com,  instructs customers to use the '257 Accused Products in numerous infringing applications. Defendant's customers directly infringe the '257 Patent when they follow Defendant's provided instructions. Defendant specifically intends that their customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell infringing products in the United States to serve and develop the United States market for Defendant's infringing products.

50.    Defendant knows following their instructions directly infringes claims of the '257 Patent and Defendant's customers who follow Defendant's provided instructions directly infringe the '257 Patent.

51.    As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

**COUNT TWO**
**INFRINGEMENT OF U.S. PATENT 10,197,258**

52.    Plaintiff incorporates by reference the allegations in paragraphs 1 - 26 as if fully set forth herein.

53.    The '258 Patent, entitled "Light System and Control Thereof," was filed on December 21, 2017, and issued on February 5, 2019.

54.     Plaintiff is the assignee and owner of all rights, title, and interest to the '258 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

## Technical Description

55.     The '258 Patent relates to a lighting system comprising: "a lighting device; and a controller for controlling the lighting device to produce user customizable realistic lighting effects, the controller comprising: a calculating device adapted to calculate a time varying lighting value based on at least one simulation parameter; and adapted to output said time varying lighting value to said lighting device so as to simulate a user customizable realistic lighting effect; wherein said lighting device and said controller are integrated in a combined unit." '285 Patent, Abstract.

56.     The '258 Patent provides a technical solution to prior art problems by, among other improvements, eliminating the need for a separate flicker box, which is independent of a lighting device, that is used to produce flickering light effects to mimic flickering light for example from a fireplace, candle, electrical spark or lightning for on set television/broadcast production use. '258 Patent, 1:21-26.

## Direct Infringement

57.     Defendant, individually and collectively as a common business enterprise and without authorization or license from Plaintiff, has been and is directly infringing the '258 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using (including for testing purposes), importing, selling, and offering for sale lighting devices that infringe one or more claims of the '258 Patent. Defendant, individually and collectively as a common business enterprise, develop, design, manufacture, sell, and distribute lighting devices that infringe one or more claims of the '258 Patent.  Defendant further provides

14

services that practice methods that infringe one or more claims of the '258 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271. An exemplary infringing product includes, but is not limited to, the Aputure P300, P600,  MC, LS300X, LS600X PRO, LS C300D II, LS 600C PRO, LS12000D PRO, Lightstorm 120D MKII, and the Amaran 300c, 150 C, 200x S, 200d S, 100x S, 100d S, COB 60x S, 60d S, 60d, 100d, 100x, Pt4c, PT2 and all other substantially similar products (collectively the "'258 Accused Products").

58.     Plaintiff names these exemplary infringing instrumentalities to serve as notice of Defendant's infringing acts, but Plaintiff reserves the right to name additional infringing products, known to or learned by Plaintiff or revealed during discovery, and include them in the definition of '258 Accused Products. As an exemplary Accused Product, the P600c is described below.

59.     Defendant is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the '258 Accused Products and other similar products.

60.     The '258 Accused Products are non-limiting examples of lighting systems that meet all limitations of at least claim 1 of the '258 Patent, either literally or equivalently.

61.     The '258 Accused Products include a lighting device:



Source: https://www.aputure.com/products/nova-p600c/

62.    The '258 Accused Products include a controller adapted to control the lighting device to produce a user customisable cinematic lighting special effect selected from a range of different user customisable cinematic lighting special effects, the controller comprising:



Source: https://www.aputure.com/products/nova-p600c/

63.     The '258 Accused Products include a controller comprising an input interface for receiving user input to enable a user to select user customisable cinematic lighting special effect from said range of different user customisable cinematic lighting special effects:



Source:  https://www.aputure.com/products/nova-p600c/



https://www.youtube.com/watch?v=nSQaWlFq7eg&t=44s

64.    The '258 Accused Products include a controller comprising an effect simulator adapted to calculate a time varying lighting value based on at least one simulation parameter. The at least one simulation parameter depends on the selected user customisable cinematic lighting special effect being simulated and is adapted to output the time varying lighting value to the lighting device so as to simulate the selected user customisable cinematic lighting special effect:



Source:  https://www.aputure.com/products/nova-p600c/

65.    The '258 Accused Products calculate, using an effect simulator, a time varying lighting value based on at least one simulation parameter. For example:

**Mode 9: FX 8-bit - List of Effects**

| Channel | Value | Percent | Function | |
|---|---|---|---|---|
| 1 | 0 - 9<br>10 - 19<br>20 - 29<br>30 - 39<br>40 - 49<br>50 - 59<br>60 - 69<br>70 - 79<br>80 - 89<br>90 - 99<br>100 - 109<br>110 - 119<br>120 - 129<br>130 - 139<br>140 - 149<br>150 - 255 | 0 - 4<br>5 - 8<br>9 - 12<br>13 - 16<br>17 - 20<br>21 - 24<br>25 - 28<br>29 - 32<br>33 - 36<br>37 - 40<br>41 - 44<br>45 - 48<br>49 - 52<br>53 - 56<br>57 - 60<br>61 - 100 | FX Selection | Club Lights<br>Paparazzi<br>Lightning<br>TV<br>Candle<br>Fire<br>Strobe<br>Explosion<br>Faulty Bulb<br>Pulsing<br>Welding<br>Cop Car<br>Color Chase<br>Party Lights<br>Firework<br>Reserved |
| 2 | 0 - 255 | 0 - 100 | Intensity | 0 - 100% |
| 3 - 10 | See FX Parameter Tables in Following Pages | | | |

Source: https://www.aputure.com/products/nova-p600c/

66.    The simulation parameters depend on the user customisable lighting effect being simulated.  For example, as shown below, the " CCT", "G/M", "Frequency" parameters are dependent on the "Paparazzi" special effect.

**FX Parameter: Paparazzi**

| Channel | Value | Percent | Function | |
|---|---|---|---|---|
| 3 | 0 - 255 | 0 - 100 | CCT | 2000 K - 10000 K |
| 4 | 0 - 10<br>11 - 20<br>21 - 119<br>120 - 145<br>146 - 244<br>245 - 255 | 0 - 4<br>5 - 8<br>9 - 47<br>48 - 57<br>58 - 96<br>97 - 100 | G / M | Neutral / No Effect<br>Full Minus Green<br>- 0.9 - - 0.1<br>Neutral / No Effect<br>0.1 - 0.9<br>Full Plus Green |
| 5 | 0 - 9<br>10 - 19<br>20 - 29<br>30 - 39<br>40 - 49<br>50 - 59<br>60 - 69<br>70 - 79<br>80 - 89<br>90 - 99<br>100 - 255 | 0 - 4<br>5 - 8<br>9 - 12<br>13 - 16<br>17 - 20<br>21 - 24<br>25 - 28<br>29 - 32<br>33 - 36<br>37 - 40<br>41 - 100 | Frequency | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>Reserved |
| 6 | 0 - 127<br>128 - 255 | 0 - 50<br>51 - 100 | Stop / Loop | Stop<br>Loop |

Source: https://www.aputure.com/products/nova-p600c/

67.    The lighting device and controller are integrated in a combined unit in the '258 Accused Products.



https://www.aputure.com/products/nova-p600c/

**<u>Willful Infringement</u>**

68.    Upon information and belief, Defendant has had actual knowledge (or should have been aware) of the '258 Patent and its infringement since at least March 22, 2023, when Rotolight sent a notice letter to Aputure.

69.    Further, Defendant has had actual knowledge of the '258 Patent and its infringement since at least service of Plaintiff's Complaint.

70.    Although Defendant has  incorporated Plaintiff's patented technology as set forth in this Complaint, Defendant has no license to use the technology described in Plaintiff's technical materials and claims disclosed in the patents, which are assigned to Plaintiff.

71.    Defendant's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Defendant.

72.     Notwithstanding this knowledge, Defendant has knowingly or with reckless disregard willfully infringed the '258 Patent. Defendant has thus had actual notice of the infringement of the '258 Patent and acted despite an objectively high likelihood that their actions constituted infringement of Plaintiff's valid patent rights, either literally or equivalently.

73.     This objective risk was either known or so obvious that it should have been known to Defendant. Accordingly, Defendant's infringement has been and continues to be willful, and Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## Indirect, Induced, and Contributory Infringement

74.     Defendant has induced and is knowingly inducing their distributors, customers, and/or end-users to directly infringe the '258 Patent, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

75.     Defendant has knowingly contributed to direct infringement by their customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the '258 Accused Products which are not suitable for substantial non-infringing use and which are especially made or specially adapted for use by its customers in an infringement of the '258 Patent.

76.     Defendant's indirect infringement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce their customers and/or end-users to directly infringe the '258 Patent.

77.     Defendant's indirect infringement additionally includes marketing their products for import by their customers into the United States. Defendant's indirect infringement further

22

includes providing product specifications instructing its customers on infringing uses of the accused products. The '258 Accused Products are designed in such a way that when they are used for their intended purpose, the user infringes the '258 Patent, either literally or equivalently. Defendant knows and intends that customers who purchase the '258 Accused Products will use those products for their intended purpose. For example, Defendant's United States website, https://www.aputure.com, instructs customers to use the '258 Accused Products in numerous infringing applications. Defendant's customers directly infringe the '258 Patent when they follow Defendant's provided instructions. Defendant specifically intends that their customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell infringing products in the United States to serve and develop the United States market for Defendant's infringing products.

78.     Defendant knows following their instructions directly infringes claims of the '258 Patent and Defendant's customers who follow Defendant's provided instructions directly infringe the '258 Patent.

79.     As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

## COUNT THREE
## INFRINGEMENT OF U.S. PATENT 10,845,044

80.     Plaintiff incorporates by reference the allegations in paragraphs 1-26 as if fully set forth herein.

81.     The '044 Patent, entitled "Lighting System and Control Thereof," was filed on April 7, 2017 and issued on November 24, 2020.

82.    Plaintiff is the assignee and owner of all rights, title, and interest to the '044 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

## Technical Description

83.    The '044 Patent relates to a method for controlling a lighting device to produce user customisable lighting effects." '044 Patent, Abstract.

84.    The '044 Patent provides a technical solution to prior art problems by, among other improvements, eliminating the need for a separate flicker box, which is independent of a lighting device, that is used to produce flickering light effects to mimic flickering light for example from a fireplace, candle, electrical spark or lightning for on set television/broadcast production use. '044 Patent, 1:18-41.

## Direct Infringement

85.    Defendant, individually and collectively as a common business enterprise and without authorization or license from Plaintiff, has been and is directly infringing the '044 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using (including for testing purposes), importing, selling, and offering for sale lighting devices that infringe one or more claims of the '044 Patent. Defendant, individually and collectively as a common business enterprise, develop, design, manufacture, sell, and distribute lighting devices that infringe one or more claims of the '044 Patent.  Defendant further provides services that practice methods that infringe one or more claims of the '044 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271. An exemplary infringing product includes, but is not limited to, the Aputure P300, P600,  MC, LS300X, LS600X PRO, LS C300D II, LS 600C PRO, LS12000D PRO, Amaran 300c, 150 C, 200x S, 200d S, 100x S, 100d S, COB

60x S, 60d S, 60d, 100d, 100x, Pt4c, PT2c, and all other substantially similar products (collectively the "'044 Accused Products").

86.     Plaintiff names these exemplary infringing instrumentalities to serve as notice of Defendant's infringing acts, but Plaintiff reserves the right to name additional infringing products, known to or learned by Plaintiff or revealed during discovery, and include them in the definition of '044 Accused Products. As an exemplary Accused Product, the P600c is described below.

87.     Defendant is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the '044 Accused Products and other similar products.

88.     The '044 Accused Products are non-limiting examples of  systems adapted to control at least one lighting device to produce a range of different user customisable lighting effects that meet all limitations of at least claim 12 of the '044 Patent, either literally or equivalently.

89.     The '044 Accused Products include an input interface adapted to receive user input of at least one user input simulation parameter to customize a lighting effect.



Source:  https://www.aputure.com/products/nova-p600c/

25



Source:   https://www.aputure.com/products/nova-p600c/

90.     The '044 Accused Products also include a memory adapted to store said at least one user input simulation parameter, said at least one user input simulation parameter depending on the lighting effect being simulated:



Source:   https://www.aputure.com/products/nova-p600c/



Source:  https://www.aputure.com/products/nova-p600c/

91.    The '044 Accused Products include an effect simulator adapted to recall from said memory said at least one stored user input simulation parameter; and calculate a time varying lighting value based on said recalled simulation parameter;

## 2.4 Fixture Presets

There are 4 preset buttons under the control box. After setting the light to the desired output mode, long press any one of the four buttons 1, 2, 3, 4 to start the process of saving the preset, and use the INT knob to select "Yes/No". Then, you can use these preset buttons in any mode to activate the mode and content previously saved to the preset.

https://www.aputure.com/wp-content/uploads/2021/09/Nova-P600c-User-Manual-English.pdf
(p.20) accessed 16th May 2023.



https://www.aputure.com/wp-content/uploads/2021/09/Nova-P600c-User-Manual-English.pdf
(p.4) accessed 16th May 2023.

92.    The effect simulator of the '044 Accused Products is further adapted to output said calculated time varying lighting value to the at least one lighting device thereby to simulate a lighting effect.



https://www.aputure.com/products/nova-p600c/

**Willful Infringement**

93.     Upon information and belief, Defendant has had actual knowledge (or should have been aware) of the '257 Patent and its infringement since at least March 22, 2023, when Rotolight sent a notice letter to Aputure.

94.     Further, Defendant has had actual knowledge of the '044 Patent and its infringement since at least service of Plaintiff's Complaint.

95.     Although Defendant has  incorporated Plaintiff's patented technology as set forth in this Complaint, Defendant has no license to use the technology described in Plaintiff's technical materials and claims disclosed in the patents, which are assigned to Plaintiff.

96.     Defendant's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Defendant.

97.    Notwithstanding this knowledge, Defendant has knowingly or with reckless disregard willfully infringed the '044 Patent. Defendant has thus had actual notice of the infringement of the '044 Patent and acted despite an objectively high likelihood that their actions constituted infringement of Plaintiff's valid patent rights, either literally or equivalently.

98.    This objective risk was either known or so obvious that it should have been known to Defendant. Accordingly, Defendant's infringement has been and continues to be willful, and Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

**Indirect, Induced, and Contributory Infringement**

99.    Defendant has induced and is knowingly inducing their distributors, customers, and/or end-users to directly infringe the '044 Patent, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

100.    Defendant has knowingly contributed to direct infringement by their customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the '044 Accused Products which are not suitable for substantial non-infringing use and which are especially made or specially adapted for use by its customers in an infringement of the '044 Patent.

101.    Defendant's indirect infringement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce their customers and/or end-users to directly infringe the '044 Patent.

102.    Defendant's indirect infringement additionally includes marketing their products for import by their customers into the United States. Defendant's indirect infringement further

includes providing product specifications instructing its customers on infringing uses of the accused products. The '044 Accused Products are designed in such a way that when they are used for their intended purpose, the user infringes the '044 Patent, either literally or equivalently. Defendant knows and intends that customers who purchase the '044 Accused Products will use those products for their intended purpose. For example, Defendant's United States website, https://www.aputure.com, instructs customers to use the '044 Accused Products in numerous infringing applications. Defendant's customers directly infringe the '044 Patent when they follow Defendant's provided instructions. Defendant specifically intends that their customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell infringing products in the United States to serve and develop the United States market for Defendant's infringing products.

103. Defendant knows following their instructions directly infringes claims of the '044 Patent and Defendant's customers who follow Defendant's provided instructions directly infringe the '044 Patent.

104. As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

**COUNT FOUR**
**INFRINGEMENT OF U.S. PATENT 10,203,101**

105. Plaintiff incorporates by reference the allegations in paragraphs 1-26 as if fully set forth herein.

106.    The '101 Patent, entitled "Lighting System and Control Thereof," was filed on December 21, 2017, claims priority to a provisional application filed on April 8, 2016, and a United Kingdom Patent Application  filed on April 8, 2016.  The 101 Patent issued on February 12, 2019.

107.    Plaintiff is the assignee and owner of all rights, title, and interest to the '101 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

## Technical Description

108.    The '101 Patent discloses a ""method for controlling a lighting device to produce user customizable realistic lighting effects while compensating for rolling shutter". '101 Patent, Abstract.

109.    The '101 Patent provides a technical solution to prior art problems by, among other improvements, providing "consistent illumination during each camera frame, short time-period (e.g., stroboscopic)". '101 Patent, 7:8-10.

## Direct Infringement

110.    Defendant has been and is directly infringing the '101 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using (including for testing purposes), importing, selling, and offering for sale lighting devices that infringe one or more claims of the '101 Patent. Defendant, individually and collectively as a common business enterprise, develops, design, manufactures, sells, and distributes lighting devices that infringe one or more claims of the '101 Patent.  Defendant further provides services that practice methods that infringe one or more claims of the '101 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271. An exemplary infringing product includes, but is not limited to, the Aputure P300, P600, MC, LS300X, LS600X PRO, LS C300D II, LS 600C

PRO, LS12000D PRO, Lightstorm 120D MKII,  and the Amaran 300c, 150 C, 200x S, 200d S, 100x S, 100d S, COB 60x S, 60d S, 60d, 100d, 100x, Pt4c, PT2 and all other substantially similar products (collectively the "'101 Accused Products").

111.    Plaintiff names these exemplary infringing instrumentalities to serve as notice of Defendant's' infringing acts, but Plaintiff reserves the right to name additional infringing products, known to or learned by Plaintiff or revealed during discovery, and include them in the definition of '101 Accused Products. As an exemplary Accused Product, the P600c is described below.

112.    Defendant is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the '101 Accused Products and other similar products.

113.    The '101 Accused Products are non-limiting examples of lighting systems that meet all limitations of at least claim 11 of the '101 Patent, either literally or equivalently.

114.    The '101 Accused Products comprises a controller adapted to control a lighting device to produce user customisable lighting effects while compensating for rolling shutter artefacts produced by a camera.



Source:  https://www.aputure.com/collections/studio-lights/



Nova-P600c-User Manual, p. 4.



https://www.aputure.com/products/nova-p600c/

115.    The '101 Accused Products comprises an effect simulator adapted to calculate a time varying lighting value compensating for the rolling shutter artefacts produced by the camera based on at least one user input simulation parameter input by a user.



Nova-P600c-User Manual, p. 10.

116.    The '101 Accused Products comprises an effect simulator having at least one user input simulation parameter comprising a user selectable parameter indicative of a member of a group consisting of: a camera recording frequency of the camera; a camera shutter speed of the camera; and a camera frame rate of the camera.



Nova-P600c-User Manual, p. 16.



https://www.aputure.com/products/ls-600c-pro/

117.    The '101 Accused Products comprises the effect simulator that is adapted to output said calculated time varying lighting value to the lighting device thereby to simulate a lighting effect compensated for rolling shutter artefacts.



https://www.aputure.com/products/ls-600c-pro/

### **Willful Infringement**

118.    Upon information and belief, Defendant has had actual knowledge (or should have been aware) of the '101 Patent and its infringement since at least March 22, 2023, when Rotolight sent a notice letter to Aputure.

119.    Further, Defendant has had actual knowledge of the '101 Patent and its infringement since at least service of Plaintiff's Complaint.

120.    Although Defendant has  incorporated Plaintiff's patented technology as set forth in this Complaint, Defendant has no license to use the technology described in Plaintiff's technical materials and claims disclosed in the patents, which are assigned to Plaintiff.

121.    Defendant's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Defendant.

122.    Notwithstanding this knowledge, Defendant has knowingly or with reckless disregard willfully infringed the '101 Patent. Defendant has thus had actual notice of the infringement of the '101 Patent and acted despite an objectively high likelihood that their actions constituted infringement of Plaintiff's valid patent rights, either literally or equivalently.

123.    This objective risk was either known or so obvious that it should have been known to Defendant. Accordingly, Defendant's infringement has been and continues to be willful, and Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## Indirect, Induced, and Contributory Infringement

124.    Defendant has induced and is knowingly inducing their distributors, customers, and/or end-users to directly infringe the '101 Patent, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

125.    Defendant has knowingly contributed to direct infringement by their customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the '101 Accused Products which are not suitable for substantial non-infringing use, and which are especially made or specially adapted for use by its customers in an infringement of the '101 Patent.

126.    Defendant's indirect infringement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce their customers and/or end-users to directly infringe the '101 Patent.

127.    Defendant's indirect infringement additionally includes marketing their products for import by their customers into the United States. Defendant's indirect infringement further includes providing product specifications instructing its customers on infringing uses of the accused products. The '101 Accused Products are designed in such a way that when they are used for their intended purpose, the user infringes the '101 Patent, either literally or equivalently. Defendant knows and intends that customers who purchase the '101 Accused Products will use those products for their intended purpose. For example, Defendant's United States website, https://www.aputure.com,  instructs customers to use the '101 Accused Products in numerous infringing applications. Defendant's customers directly infringe the '101 Patent when they follow Defendant's provided instructions. Defendant specifically intends that their customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell infringing products in the United States to serve and develop the United States market for Defendant's infringing products.

128.    Defendant knows following their instructions directly infringes claims of the '101 Patent and Defendant's customers who follow Defendant's provided instructions directly infringe the '101 Patent.

129.    As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

## VI.    NOTICE

130.    Plaintiff has complied with the notice requirement of 35 U.S.C. § 287. This notice requirement has been complied with by all relevant persons at all relevant times.

## VII.   JURY DEMAND

131.   Plaintiff demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief against Defendant as follows:

A.   That the Court determined that one or more claims of the Asserted Patents is infringed by Defendant, both literally and under the doctrine of equivalents;

B.   That the Court determine that one or more claims of the Asserted Patents is indirectly infringed by Defendant;

C.   That the Court award damages, including lost profits, adequate to compensate Plaintiff for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement;

D.   That the Court permanently enjoin Defendant pursuant to 35 U.S.C. § 283;

E.   That the Court find this case to be exceptional pursuant to 35 U.S.C. § 285;

F.   That the Court determined that Defendant's infringements were willful;

G.   That the Court award enhanced damages against Defendant pursuant to 35 U.S.C. § 284;

H.   That the Court award reasonable attorneys' fees; and

I.   That the Court award such other relief to Plaintiff as the Court deems just and proper.

## IX.   <u>RESERVATION OF RIGHTS</u>

Rotolight's investigation is ongoing, and certain material information remains in the sole possession of Aputure or third parties, which will be obtained via discovery herein. Rotolight

expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with FED. R. CIV. P. 15.

Dated: June 5, 2023                         Respectfully Submitted,

                                            /s/ *Bradley D. Liddle*
                                            E. Leon Carter
                                            lcarter@carterarnett.com
                                            Texas Bar No. 03914300
                                            Bradley D. Liddle
                                            bliddle@carterarnett.com
                                            Texas Bar No. 24074599
                                            Scott W. Breedlove
                                            sbreedlove@carterarnett.com
                                            State Bar No. 00790361
                                            Joshua J. Bennett
                                            jbennett@carterarnett.com
                                            Texas Bar No. 24059444
                                            Theresa M. Dawson
                                            tdawson@carterarnett.com
                                            Texas State Bar No. 24565128
                                            Michael C. Pomeroy
                                            mpomeroy@carterarnett.com
                                            Texas Bar No. 24098952
                                            Nathan Cox
                                            ncox@carterarnett.com
                                            Texas Bar No. 24105751
                                            CARTER ARNETT PLLC
                                            8150 N. Central Expy, 5th Floor
                                            Dallas, Texas 75206
                                            Telephone No. (214) 550-8188
                                            Facsimile No. (214) 550-8185

                                            **ATTORNEYS FOR PLAINTIFF**